**2015 UT App 209**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
SHERRIE LYNN BECKERING,
Defendant and Appellant.

Opinion
No. 20130254-CA
Filed August 20, 2015

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 111902545

Richard G. Uday, Attorney for Appellant

Sean D. Reyes and Daniel W. Boyer, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and JOHN A. PEARCE concurred.

TOOMEY, Judge:

¶1      Defendant Sherrie Lynn Beckering appeals her conviction
for aggravated abuse of a vulnerable adult, which was enhanced
to a first-degree felony because the jury found she acted in
concert with others. Beckering argues her trial counsel rendered
constitutionally ineffective assistance because he failed to object
to purported errors in the jury instructions. She also argues the
trial court erred by allowing "gruesome" photographs to be
admitted into evidence. We affirm.

BACKGROUND

¶2      On March 25, 2011, police officers and paramedics
responded to a 911 call and found a twenty-two-year-old woman

(Victim) in Beckering's house "lying on the ground" unconscious.[1] The paramedics could not revive her, and Victim was pronounced dead at the scene. The police officers noted several obvious injuries on Victim's body, including several large bruises on her left hip and thigh. Officers noticed "ligature marks" on her ankles, which matched cut nylon zip ties discovered near her body. They also found a red pepper flake under her lower-right eyelid. Someone had wrapped Victim's hands in ACE bandages "all the way around her hand . . . and then they went down to about her elbows" in a "mitten type of fashion." The bandages were wrapped so tightly Victim could not have moved her fingers or thumbs. Under the bandages, Victim had deep tissue damage and numerous open ulcers. The State medical examiner later noted large areas of bruising with "well defined" edges and a "distinct pattern" on Victim's body. He also observed red spots on Victim's lips, forehead, and cheeks "likely related to exposure to some sort of an irritant." Ultimately, the medical examiner ruled that Victim "died as a result of improper care by her caregiver or caregivers . . . . based upon inflicted injuries including patterned injuries, deprivation of water, dehydration and electrolyte abnormalities, immobilization with use of restraints and confinement to a closet and excessive dosing with sedating medication."

¶3     Victim suffered from fetal alcohol syndrome and was "developmentally delayed." After Victim's mother died of cancer, Beckering's daughter, Cassandra Shepard, became Victim's legal guardian and caretaker. Shepard, Shepard's two daughters, Victim, and Victim's daughter lived with Beckering and her husband in Beckering's two-story house.

---

1. For a more detailed description of the background facts in this case, see *State v. Beckering*, 2015 UT App 53, ¶¶ 2–14, 346 P.3d 672, in which this court affirmed Beckering's husband's conviction for being a party to reckless aggravated abuse of a vulnerable adult for his role in Victim's death.

¶4    Beckering was charged as a party to aggravated abuse of a vulnerable adult for conduct spanning from July 1, 2010, to March 25, 2011. At trial, Beckering testified she knew nothing about Victim's injuries and had no role in caring for her. She claimed that, although she had cared for Victim in the past, she did not have "any type of responsibility" for Victim during the time of the alleged abuse. According to Beckering, she and her husband lived in the downstairs area of the house and everyone else, including Victim, lived upstairs. Even though the only kitchen in the house was upstairs, she insisted that the floors were "separate" and that, as a result, she only occasionally saw Victim.

¶5    To rebut Beckering's claims of ignorance, the State presented testimony from several witnesses to demonstrate that Beckering cared for Victim. The State also presented evidence, including the medical examiner's report and several photographs, to demonstrate that Victim's injuries were intentional or non-accidental and so severe as to have been noticeable to anyone in the house. For example, Shepard's daughters described Victim's punishments in detail, testifying that Shepard and Beckering took turns caring for Victim and that the abuse often occurred in the closet near the kitchen and the living room.

¶6    Before trial, Beckering objected to the admission of at least six photographs offered by the State on the grounds that they were "irrelevant, highly prejudicial or gruesome." The trial court denied Beckering's pre-trial motion to suppress the photographs and admitted them into evidence at trial, concluding they were relevant to the State's theory and not gruesome.[2] The challenged

---

2. Prior to trial, Beckering objected to a number of the State's proposed exhibit photographs, but did not attach them to the pre-trial motion. At trial, Beckering's counsel renewed the objections when the challenged photographs were offered into evidence. On appeal, Beckering has indicated that she challenges "five" photographs, but has listed six of the State's exhibit

(continued…)

photographs each depict the deceased victim and are as follows: "Exhibit 13" depicts Victim's face with a pepper seed under one of her lower eyelids; "Exhibit 18" depicts Victim's face and open mouth showing the bruising and speckling on her skin and lips; "Exhibit 19" shows patterned bruises on Victim's hip and legs; and "Exhibit 22" is two small photographs of Victim's right and left hands which show open skin ulcers.[3]

¶7    The jury convicted Beckering of aggravated abuse of a vulnerable adult under Utah Code section 76-5-111(2)(a). It determined she had acted knowingly or intentionally, and enhanced her conviction for acting in concert with others pursuant to Utah Code section 76-3-203.1. She was sentenced to an indeterminate term of five years to life in prison. Beckering appeals.

ANALYSIS

I. Jury Instructions

¶8    Beckering contends her trial counsel performed ineffectively by not objecting to several errors in the jury instructions given by the court. In particular, she argues the jury

---

(…continued)

photographs in her argument. But the record does not include the State's exhibits. The record contains only four photographs, which were attached to the State's opposition to Beckering's pre-trial motion to suppress. Because only four of the challenged photographs are in the record—"Exhibit 13," "Exhibit 18," "Exhibit 19," and "Exhibit 22"—we have limited our analysis to those photographs.

3. Because the photographs in the record—attached to the State's opposition to Beckering's pre-trial motion—were not labeled as exhibits, we have identified them with the "exhibit" numbers used in the transcript and in Beckering's appellate brief.

instructions were erroneous because they did not make clear that each of several terms—"party to the offense," "vulnerable adult," and "caretaker"—were separate factual determinations the jury needed to make in finding Beckering's guilt. The elements instructions, Beckering asserts, "were too conclusory and they incorrectly presented [the terms] as . . . 'established and given facts' rather than letting the jury decide such facts for themselves." Beckering also argues that language added to the elements instruction, which was not present in the statute, created uncertainties in the jury's findings. As we have recently analyzed and decided these very issues, *see State v. Beckering*, 2015 UT App 53, ¶¶ 20–37, 346 P.3d 672, we reject these arguments.

¶9     To demonstrate that trial counsel provided constitutionally ineffective assistance, Beckering must show "both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Layton City v. Carr*, 2014 UT App 227, ¶ 12, 336 P.3d 587 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). She must overcome a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). And trial counsel's performance will not be deemed deficient unless Beckering can "'show that counsel's representation fell below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). Moreover, "[t]o establish the prejudice element of an ineffective assistance of counsel claim, the defendant must show that a reasonable probability exists that, but for counsel's error, the result would have been different." *Id.* (citation and internal quotation marks omitted). "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether [the] defendant was deprived of the effective assistance of counsel as a matter of law." *Id.* ¶ 6 (alteration in original) (citation and internal quotation marks omitted).

¶10     "The general rule for jury instructions is that an accurate instruction upon the basic elements of an offense is essential."

*State v. Bird*, 2015 UT 7, ¶ 14, 345 P.3d 1141 (citation and internal quotation marks omitted). "To determine if jury instructions correctly state the law, we 'look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case.'" *State v. Painter*, 2014 UT App 272, ¶ 6, 339 P.3d 107 (quoting *State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892). Furthermore, "[w]hen a single element in a criminal-elements instruction contains multiple factual determinations, the element implicitly requires the jury to resolve each of those factual determinations in favor of the State in order to convict." *Beckering*, 2015 UT App 53, ¶ 24.

¶11  Although the disputed terms were couched within enumerated elements of the crime, rather than being listed as separate elements, the jury instructions included the disputed terms and instructed the jury on the applicable law. Moreover, the jury received a separate instruction defining the concept of "party to the offense" or "accomplice liability" and an instruction defining the terms "caretaker" and "vulnerable adult."[4] Accordingly, we are not convinced the organization of the instructions misled the jury or "insufficiently or erroneously advise[d] the jury on the law." *Cf. State v. Stringham*, 2001 UT App 13, ¶ 17, 17 P.3d 1153 (citation and internal quotation marks omitted) (explaining that failure to give a requested instruction is reversible error only if the omission misleads or erroneously advises the jury).

---

4. Beckering argues the jury instructions were erroneous because, although they required the jury to determine whether Beckering caused or permitted harm to a vulnerable adult, they did not specifically require the jury to find that Victim was a vulnerable adult. We are not persuaded. To determine whether Beckering "[c]aused a vulnerable adult to suffer serious physical injury" or permitted a "vulnerable adult's person or health to be injured," the jury necessarily needed to determine whether Victim—the only person harmed in this case—was a vulnerable adult.

¶12    Beckering also argues that trial counsel performed ineffectively by not objecting to the elements instruction that added language requiring the jury to determine whether she acted "as a *party to the offense*, including as a caretaker." (Emphasis added.) She asserts that because being a "'party to the offense' is not the same as being a 'caretaker'" and because both terms were present in the instruction, there are "uncertainties and inconsistencies in determining whether the jury had factually found that Sherrie Beckering was a 'caretaker' or a 'party to the offense.'" Beckering's argument suggests the jury could have mistakenly thought that finding that she was a "caretaker" would satisfy the requirement of finding that Beckering was a "party to the offense" for the purposes of the in-concert enhancement.[5]

¶13    Even if we determined there was an error in the challenged jury instruction, Beckering has failed to demonstrate that the error prejudiced her defense. The language used in the jury instruction is consistent with the language and structure of Utah Code section 76-5-111(2), which provides for criminal penalties against "any person, including a caretaker," who "is guilty of the offense of aggravated abuse of a vulnerable adult." *See State v. Beckering*, 2015 UT App 53, ¶ 31 & n.3, 246 P.3d 672. An instruction that stated the elements of the crime verbatim would require the jury to find only that Beckering was "any person." Utah Code Ann. § 76-5-111(2) (LexisNexis 2012). By substituting the language "any person" with "party to the

---

5. Implicit in Beckering's argument is the suggestion that the jury may have inappropriately found that she was a "party to the offense" by relying on the mistaken belief that finding Beckering was a "caretaker" would satisfy the requirement of finding Beckering had acted in concert with others. We are not persuaded. The instructions thoroughly explained what "party to the offense" meant and the jury was required to make a separate finding as to whether Beckering's culpability was enhanced by acting in concert with two or more persons. *See supra* ¶ 11.

offense," the instruction required the jury to make a more narrow finding which increased the State's burden and benefited Beckering. In particular, to find Beckering guilty of aggravated abuse of a vulnerable adult, the instruction's language required the State to demonstrate Beckering was something more than "any person" as the statute requires; it imposed the additional burden on the State to prove Beckering was either a "party to the offense" or a "caretaker," where "any person" would satisfy the requirements provided by the statute. This increased burden on the State stood to benefit Beckering by requiring the jury to make an additional finding not required by the statute. An error that "actually benefits the defendant" cannot serve as the basis for a claim of ineffective assistance of counsel. *See State v. Malaga*, 2006 UT App 103, ¶ 16 n.4, 132 P.3d 703. Beckering fails to persuasively explain how the language "as a party to the offense, including as a caretaker" caused prejudice or how altering or removing the language from the elements instruction would have led to a more favorable result. Accordingly, we are not convinced any error in adding the language "party to the offense" prejudiced Beckering's defense.

¶14   In sum, Beckering has failed to demonstrate that trial counsel performed ineffectively with regard to the jury instructions or that "but for counsel's error, the result would have been different." *See Layton City v. Carr*, 2014 UT App 227, ¶ 12, 336 P.3d 587 (citation and internal quotation marks omitted). Because "the instructions given still required the jury to resolve each individual factual determination in the State's favor to find that the State had proven the elements as a whole," we therefore conclude that there was no deficient performance by counsel in allowing the elements instruction. *Beckering*, 2015 UT App 53, ¶ 27.

## II. Photographs

¶15   Beckering also challenges the trial court's decision to admit Exhibits 13, 18, 19, and 22 into evidence, arguing that the unfair prejudice to her defense substantially outweighed their probative value. Specifically, she argues the photographs are

irrelevant and gruesome, and because they are gruesome, the State failed to meet its burden of showing they had unusual probative value that substantially outweighed the unfair prejudice. *See State v. Vargas*, 2001 UT 5, ¶ 51, 20 P.3d 271; *State v. Stapley*, 2011 UT App 54, ¶ 8, 249 P.3d 572.

¶16 When determining whether an allegedly gruesome photograph is admissible, we apply the three-part test adopted by the Utah Supreme Court in *State v. Bluff*, 2002 UT 66, ¶ 46, 52 P.3d 1210. "The threshold question when considering the admissibility of any piece of evidence is whether it is relevant." *Id.* ¶ 42. "If the proffered evidence is relevant, the court must next determine whether the evidence belongs to one of the categories of evidence that we presume to be inherently prejudicial, such as gruesome photographs." *Id.* ¶ 43. Finally, the court must apply the appropriate balancing test. *Id.* ¶¶ 44–46. If the photograph is not gruesome, the court may apply the standard rule 403 balancing test in which "the court must admit the photograph if its probative value is not substantially outweighed by its potential to unfairly prejudice the jury." *Id.* ¶ 44. But, if "the photograph meets the legal definition of gruesomeness, it may not be admitted absent a showing of 'unusual probative value.'" *Id.* ¶ 45 (quoting *State v. Lafferty*, 749 P.2d 1239, 1256 (Utah 1988)). The burden is then shifted to "the State to show that the probative value of such evidence substantially outweighs the risk of unfair prejudice." *Id.*

¶17 In considering the admission of the challenged photographs, "we review the trial court's determination of whether the photographs are relevant for abuse of discretion." *Id.* ¶ 47. "The determination of whether a photograph is gruesome is a question of law, which we review for correctness." *Id.* Then, "[a] trial court's ruling under rule 403 is reviewed for abuse of discretion." *Id.* Even if the court erroneously admitted the photographs, that ruling requires reversal only if it "had a substantial influence in bringing about the verdict." *Id.* (citation and internal quotation marks omitted); *see also* Utah R. Evid. 103(a) (providing that a "party may claim error in a ruling to

admit or exclude evidence only if the error affects a substantial right of the party").

¶18    With respect to relevance, "[e]vidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Bluff*, 2002 UT 66, ¶ 42 (quoting Utah R. Evid. 401 (2002)). At trial, Beckering was charged with intentionally or knowingly abusing Victim, but maintained she had no knowledge of Victim's injuries. In support of its case, the State presented Exhibit 18, which shows bruising and speckling on Victim's face, to demonstrate that the "visible reaction of [Victim's] skin would have been obvious to anyone who saw her face." The State presented Exhibit 19, which depicts large patterned bruises on Victim's hip and thigh, to support the State's theory that someone intentionally struck Victim. And the State presented Exhibits 13 and 22 to demonstrate that the bandages on Victim's arms had been on for an extended period, and to demonstrate that because Victim did not have the use of her hands, someone other than Victim would have had to put the pepper seed in her eye. Because they tended to make the State's theory—that someone intentionally abused Victim and that Victim's injuries would have been apparent to Beckering—more probable than if there were no photographs admitted into evidence, we conclude that the trial court did not abuse its discretion in determining that the photographs were relevant.

¶19    Next, we consider whether the photographs are gruesome. To determine whether a photograph is gruesome, courts consider several non-exclusive factors, including

> whether the photograph is in color or black and white; whether it is an enlargement or close-up shot; when the photo was taken in relation to the crime; and whether other details in the photo, aside from the victim, may exacerbate the photograph's impact on the viewer.

*State v. Gulbransen*, 2005 UT 7, ¶ 39, 106 P.3d 734. "A photograph is not gruesome, however, merely because it is unpleasant to view. Rather, gruesome means something much stronger than being offensive, embarrassing, or graphic. . . . [I]t inspire[es] horror or repulsion." *Stapley*, 2011 UT App 54, ¶ 15 (alterations and omission in original) (citations and internal quotation marks omitted). Each of the challenged photographs depicts a close-up, cropped, color image of Victim. The images were projected on a large screen in the courtroom to make them easier to see. But none of the images show unnatural body contortions, blood, or oozing wounds. Although Exhibit 22 shows open sores on Victim's arms, "[t]he sterile and clean manner in which [Victim] is depicted negates the effect" of the wounds. *See Bluff*, 2002 UT 66, ¶¶ 49, 51. We recognize that the Utah Supreme Court has cautioned that enlargements or close-ups "show greater detail and therefore are often more disturbing than a life-like view . . . or may give a distorted impression of the thing photographed," but the images in this case do not unfairly characterize Victim's condition. *See id.* ¶ 50 (omission in original) (citation and internal quotation marks omitted). Although the challenged photographs are unpleasant and cause discomfort, there is nothing otherwise inflammatory about them. We therefore conclude that the trial court did not err in determining they are not gruesome.

¶20 Because the photographs are not gruesome, we must determine whether the trial court exceeded its discretion in admitting them under rule 403 of the Utah Rules of Evidence. Rule 403 allows the court to exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403. The trial court concluded that, because the photographs tended to demonstrate that Victim's injuries were intentional and would be obvious to any person who encountered her, they were highly probative of the State's case. Beckering suggests that, because one juror had a "visibly emotional reaction" to the photographs and "refused to observe" them, the photographs had a "prejudicial impact on the jury." We agree that viewing the

challenged photographs could reasonably cause an emotional reaction, but this does not make them less probative. Given the nature of the case and Beckering's defense, the photographs were highly probative of contested elements of the charged offense. Moreover, as discussed above, their disturbing nature is the essence of the injuries themselves, not a deliberate attempt by the State to distort the extent of Victim's injuries or otherwise mislead the jury. *See State v. Stapley*, 2011 UT App 54, ¶ 16, 249 P.3d 572. Even if the court had erred, Beckering would have needed to demonstrate prejudice by showing how the photographs' admission had a "substantial influence in bringing about the verdict." *See State v. Bluff*, 2002 UT 66, ¶ 47, 52 P.3d 1210 (citation and internal quotation marks omitted). She has not done so. Therefore, because any prejudicial effect of the photographs did not substantially outweigh their highly probative value, we conclude the trial court did not abuse its discretion in admitting the photographs.

## CONCLUSION

¶21 Beckering has not demonstrated that trial counsel performed ineffectively with regard to the jury instructions. Moreover, because the challenged photographs are not gruesome, we conclude the trial court did not exceed its discretion by admitting the photographs into evidence. We affirm.

_____