**2022 UT App 59**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SILVIA SERRANO-VARGAS,
Appellant.

Opinion
No. 20191091-CA
Filed May 12, 2022

Third District Court, Salt Lake Department
The Honorable Heather Brereton
No. 191901921

Gregory W. Stevens, Attorney for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1      With the evidence showing that police found substantial amounts of drugs and cash in a bedroom that Silvia[1] Serrano-Vargas exclusively rented and occupied, the jury found her guilty of various charges, including possession of drug paraphernalia, possession of drugs, and possession of drugs with intent to distribute. Serrano-Vargas now appeals, asserting that the trial

---

1. Throughout the record, the spelling of Serrano-Vargas's given name alternates between "Silvia" and "Sylvia." For consistency, we use the first spelling and do not indicate an alteration in those quotes that used the alternate spelling.

court erred in denying her motion for a directed verdict and that her trial counsel rendered ineffective assistance. We affirm.

BACKGROUND[2]

¶2 After conducting a successful controlled buy in which police sent an individual to purchase drugs at a particular apartment from a woman named "Silvia," police executed a search focused on "Silvia Pacheco-Alires" at that apartment. That warrant focused on "Silvia Pacheco-Alires" because the phone number used to arrange the controlled buy was registered under that name. But upon entering the apartment, instead of finding a "Silvia Pacheco-Alires," police found, along with several other individuals, "Silvia Serrano-Vargas."

¶3 As police searched the apartment, they found substantial evidence of drug use. But in a bedroom, a portion of the apartment sub-rented exclusively to Serrano-Vargas for her sole occupancy, the police found more. There, police found a black garbage bag sitting on top of a dresser. The bag contained many small bags "commonly used for drug packaging and distribution," "two glass crack pipes," a scale, approximately 18 grams (180 doses worth $1,800) of heroin, approximately 17.7 grams (177 doses worth $1,770) of crack cocaine, and $469 in cash. Atop the same dresser, next to the black garbage bag, police found a woman's makeup bag. And in the bottom drawer of that same dresser, police found a purple purse. Inside that purse, police found $2,460 in cash, "three Mexican government ID cards with the name and a photograph of Silvia Serrano-Vargas," a social security card with Serrano-Vargas's name on it, several glass crack pipes, a baggie with 0.10 grams of methamphetamine, a

---

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *Layton City v. Carr*, 2014 UT App 227, ¶ 2 n.2, 336 P.3d 587 (cleaned up).

baggie with 0.10 grams of cocaine, and a scale for weighing drugs. In the bedroom closet, police found clothing belonging to Serrano-Vargas and a lockbox containing "$8,451 in cash, along with a number of receipts for MoneyGram transfers with Silvia Serrano-Vargas's name." Police also found two cell phones, both of which Serrano-Vargas claimed as her own. While speaking with Serrano-Vargas in the bedroom, police called the phone number used to arrange the controlled buy. One of Serrano-Vargas's phones rang in response.

¶4 Following this search, police arrested Serrano-Vargas, and the State charged her with one count of possession of drug paraphernalia, one count of drug possession, and two counts of possession of drugs with intent to distribute.

¶5 At trial, Serrano-Vargas moved for a directed verdict, arguing that the State presented insufficient evidence to convict her. Specifically, she argued that constructive possession could not reasonably be found by the jury because many people were in the apartment, that drug paraphernalia was found throughout the apartment, that the State did not fingerprint test any of the bedroom's contents, that she did not claim all the items found in the bedroom, that the police found another individual's backpack and prescription pill bottles in the bedroom, that the search warrant contained a different name from hers, and that the police could not identify the individual who sold the drugs during the controlled buy.

¶6 The State responded that "based on the evidence presented in a light in favor of the State, a [jury] could find [Serrano-Vargas] guilty . . . based on the evidence [that was] found in the bedroom." The State argued that the evidence demonstrated that the bedroom was Serrano-Vargas's and that she exclusively rented the bedroom, that the bedroom contained various personal property, and that the quantity of drugs found among that personal property suggested that "a reasonable juror could find that these items [belonged] to [Serrano-Vargas] and that she [was]

guilty of these offenses." The trial court denied the motion, and Serrano-Vargas was convicted on all counts.

¶7 After trial, Serrano-Vargas learned that the police had discovered the identity of the apartment's primary lessee during their interviews but had not provided that information to the defense or presented that information at trial.[3] And despite the fact that Serrano-Vargas likely knew the primary lessee's identity, trial counsel allegedly had not investigated and sought to obtain those interviews and did not present that information at trial to persuade the jury that Serrano-Vargas lacked control over the room that she leased. Serrano-Vargas now appeals.

ISSUES AND STANDARDS OF REVIEW

¶8 Serrano-Vargas raises two issues that we resolve on appeal. First, she contends that the trial court erred in denying her motion for a directed verdict based on a claim of insufficiency of the evidence.

> When a party moves for a directed verdict based on a claim of insufficiency of the evidence, we will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some

---

3. Regarding these circumstances, in her opening brief, Serrano-Vargas also contended that the court abused its discretion in denying a motion for a new trial based on an alleged violation of due process as described in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). But at oral argument, Serrano-Vargas conceded that no *Brady* violation occurred, so we do not discuss the issue further.

evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.

*State v. Doyle*, 2018 UT App 239, ¶ 11, 437 P.3d 1266 (cleaned up).

¶9 Second, Serrano-Vargas contends that her trial counsel rendered ineffective assistance by failing to further investigate and present evidence of the police interviews showing the true name of the primary lessee of the apartment where Serrano-Vargas's room was located. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Beckering*, 2015 UT App 209, ¶ 9, 358 P.3d 1131 (cleaned up).

ANALYSIS

I. Sufficiency of the Evidence

¶10 Serrano-Vargas contends that the trial court erred when it denied her motion for a directed verdict. Specifically, she argues that the evidence could not support a finding that she constructively possessed the contraband in the bedroom such that the jury could find her guilty of the charged crimes. We are not persuaded.

¶11 "On appeal, we do not reweigh the evidence presented to the jury," and we "resolve conflicts in the evidence in favor of the jury verdict." *State v. Wall*, 2020 UT App 36, ¶ 53, 460 P.3d 1058 (cleaned up). Accordingly, to succeed on her claim, Serrano-Vargas would need to show that the evidence, as presented to the jury—the exclusive judge of witness credibility and the weight to be given the evidence—"is insufficient when viewed in the light most favorable to the verdict." *See id.* (cleaned up).

¶12    To meet this burden, Serrano-Vargas argues that "a nexus sufficient to establish constructive possession cannot be established solely by nonexclusive ownership or occupancy of the place where the contraband is found" and recites various pieces of evidence that could arguably cut against a finding of constructive possession. But the State did not rest its case solely on "ownership or occupancy of the place where the contraband is found," exclusive or not. And the circumstances surrounding the contraband found in the bedroom support the jury's determination, regardless of the facts that others inhabited the apartment, that another individual's backpack had been found in the bedroom, and that all the contraband did not have a direct connection to Serrano-Vargas.

¶13    To demonstrate constructive possession, "the circumstantial evidence necessary to convict is evidence showing a sufficient nexus between the accused and the contraband to permit an inference that the accused had both the power and the intent to exercise dominion and control over the contraband." *State v. Ashcraft*, 2015 UT 5, ¶ 19, 349 P.3d 664 (cleaned up). Although "ownership or occupancy of the premises where contraband is discovered . . . may not be enough to show constructive possession by itself," evidence that can demonstrate constructive possession includes "ownership and . . . occupancy," "presence of the defendant when the contraband is discovered," "proximity to the contraband," "previous drug use by the defendant," and "presence of contraband in a specific area where the defendant had control." *Id.* ¶¶ 19–20 (cleaned up).

¶14    For example, in *Ashcraft*, the defendant argued that "the only connection between him and the [contraband] was his occupancy of the truck" in which the contraband was found. *Id.* ¶¶ 7, 21. But the court disagreed because the defendant had repeatedly driven through a known drug-activity area, had a large amount of cash, was near enough the contraband that he could have reached it from the driver seat of the car, and had accused the officer of planting the bag containing the contraband

before it had even been opened. *Id.* ¶ 21; *see also State v. Workman*, 2005 UT 66, ¶ 34, 122 P.3d 639 (holding that a defendant had constructive possession when, among other things, her belongings were intermingled with the contraband).

¶15    On the other hand, in *State v. Gonzalez-Camargo*, 2012 UT App 366, 293 P.3d 1121, constructive possession was not established when, apart from "inferences," "the only evidence tying [the defendant] to the [contraband was] that he was present, along with approximately twelve to fourteen other people, when the police executed the search warrant, and that the [contraband] was discovered somewhere in the bedroom that he shared with [another]." *Id.* ¶ 26; *see also State v. Fox*, 709 P.2d 316, 320 (Utah 1985) (holding that a defendant did not have constructive possession when his connections to the residence containing the contraband were separable from the area where the contraband was found).

¶16    Here, substantial evidence connected Serrano-Vargas to the contraband. First, although she contends that her occupancy of the bedroom was "nonexclusive," the presence of others in the apartment and the presence in the bedroom of a single backpack attributed to another person does not amount to evidence that would prevent the jury from reasonably determining that Serrano-Vargas exercised control over the bedroom and its contents. Indeed, although she claimed she did not have a connection to all the bedroom's contents, Serrano-Vargas reported to police that she paid rent specifically for the bedroom, which contained only one bed, and that "[n]o one else stayed in the room with her." Inside that bedroom, police found a dresser with a makeup bag atop it. Alongside that makeup bag, police found a black garbage bag containing, among other things, distributable amounts of drugs, drug paraphernalia, and substantial amounts of cash—which, according to trial testimony, was a combination of contraband and cash not normally possessed by the average drug user. In that dresser's bottom drawer, despite the fact that Serrano-Vargas told them that she

had only $1,200 in cash and no drugs, police found a purple purse containing $2,460 in cash, several glass crack pipes, methamphetamine, cocaine, a digital scale, "three Mexican government ID cards with the name and a photograph of Silvia Serrano-Vargas," and a social security card with Serrano-Vargas's name. In the bedroom closet, which contained clothing Serrano-Vargas claimed as her own, police found a lockbox containing an additional $8,451 in cash intermingled with MoneyGram transfers that showed Serrano-Vargas's name. And perhaps most condemning of all, when police called the phone number used to arrange the controlled buy, a phone started ringing—a phone Serrano-Vargas claimed as her own.

¶17   "Simply put, that [a] jury weighed the evidence differently than [a defendant] believes it should have is not enough to persuade us that the evidence . . . was insufficient." *State v. Law*, 2020 UT App 74, ¶ 26, 464 P.3d 1192; *see also State v. Cady*, 2018 UT App 8, ¶ 32, 414 P.3d 974 ("So long as sufficient evidence supports each of the guilty verdicts, state courts generally have upheld the convictions." (cleaned up)). This is because we must "resolve conflicts in the evidence in favor of the jury verdict." *Wall*, 2020 UT App 36, ¶ 53 (cleaned up). And here, substantial evidence supported the jury's verdict. Indeed, unlike *Gonzalez-Camargo*, and similar to *Ashcraft*, *see supra* ¶¶ 14–15, more evidence linked Serrano-Vargas to the contraband than her mere presence, including her testimony about her rental and sole occupancy of the room, her intermingled personal belongings, and the phone with a direct connection to the drug trafficking.

¶18   Accordingly, because sufficient evidence supported the jury's verdict, we affirm the trial court's decision to deny the directed verdict motion based on insufficiency of the evidence.

## II. Ineffective Assistance of Counsel

¶19   Serrano-Vargas also claims that her trial counsel rendered ineffective assistance by failing to investigate, obtain, and present

evidence of the police interviews identifying the name of the primary lessee of the apartment where Serrano-Vargas's room was located. On appeal, Serrano-Vargas claims that the police interviews disclosed this name and that had counsel used the interviews at trial to show the identity of the primary lessee of the apartment, the jury would have rendered a different verdict because it would have impacted their evaluation of constructive possession.

¶20 However, the transcripts of these interviews—interviews on which Serrano-Vargas relies in presenting her ineffective assistance claim—are not in the record. And "where, on direct appeal, a defendant raises a claim that trial counsel was ineffective . . . , the defendant bears the burden of assuring the record is adequate." *McCloud v. State*, 2019 UT App 35, ¶ 40, 440 P.3d 775 (cleaned up), *aff'd*, 2021 UT 51, 496 P.3d 179; *see also State v. Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92 ("Appellants bear the burden of proof with respect to their appeals, including the burdens attending the preservation and presentation of the record."); *cf. Turner v. Nelson*, 872 P.2d 1021, 1024 (Utah 1994) (providing that to show "the trial court erred," an appellant "must provide this court with a complete record of all evidence relevant to the alleged error"). As stated, the record here does not contain the interviews that Serrano-Vargas alleges would show who actually leased the apartment. And because we do not know what is in the interview transcripts, we cannot evaluate whether it is reasonably likely that Serrano-Vargas would have obtained a more favorable outcome at trial if that evidence had been obtained. *See State v. Scott*, 2020 UT 13, ¶ 43, 462 P.3d 350 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The burden is on the defendant to demonstrate a reasonable probability that the outcome of his or her case would have been different absent counsel's error." (cleaned up)). Accordingly, we cannot consider her ineffective assistance of counsel claim.

CONCLUSION

¶21 Because the trial court did not err in determining that sufficient evidence supported the jury's verdict and because we are unable to consider Serrano-Vargas's ineffective assistance of counsel claim, we affirm her convictions.

———————