2002 UT App 223

**WEST VALLEY CITY, Plaintiff and Appellee,**

v.

**Roy HOSKINS, Defendant and Appellant.**

**No. 20010589–CA.**

Court of Appeals of Utah.

June 27, 2002.

W. Andrew McCullough and Trenton K. Ricks, McCullough & Associates, Midvale, for Appellant.

J. Richard Catten, West Valley City Attorney's Office, West Valley City, for Appellee.

Before JACKSON, P.J., and ORME and THORNE, JJ.

## OPINION

THORNE, Judge:

¶1 Defendant Roy Hoskins appeals from his conviction, following a bench trial, for Fleeing a Police Officer, a class B misdemeanor, in violation of West Valley City Utah Municipal Code § 21–6–107 (1999) (the Ordinance). We affirm.

## BACKGROUND

¶2 We "review the facts in the record in the light most favorable to the verdict." *State v. Layman,* 1999 UT 79,¶3, 985 P.2d 911.

¶3 On March 22, 2001, West Valley City Police Department officers responded to a report of a man with a gun at a park within city boundaries. As two of the officers approached the park, they noticed a man, Hoskins, matching the description of the reported gunman, "confronting some males at the basketball court." The officers then pulled over to the roadside and observed the situation while they waited for additional officers to arrive. When the additional officers arrived, the two officers who had first responded got out of their vehicle, approached Hoskins, and one of them ordered him to stop. Upon hearing the officer, Hoskins turned and proceeded to walk toward his house.[1] The officer ordered Hoskins to stop at least twice more as Hoskins proceeded across the street and into his house.

¶4 Shortly after entering the house, Hoskins exited from either a back or side door, and "walked around the side of the house ... toward the front yard." As Hoskins reached the front of the house, the officers confronted and arrested him. He was charged with fleeing from a police officer.

¶5 At trial, Hoskins testified that while he had heard an officer yelling "stop," he had no reason to believe that the command was directed at him. Thus, he further testified, he had walked across the street, not hopped, jumped, or pranced, and went into the house

---

1. The officer actually testified that Hoskins "put his hands up in the air and started to dance around and he headed north across the street, going to the house on the northeast corner."

The officer also characterized the movement as "hopping up and down," "jumping up and down," and "prancing across the road."

to put his dogs in the backyard, as was his normal practice. He then testified that after he had let the dogs into the backyard, he had come back to the front of the house only to investigate his girlfriend's yelling. After weighing the evidence, the trial court convicted Hoskins of fleeing from the officers. Hoskins appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Hoskins argues that his alleged behavior does not rise to the level of "fleeing or evading" a police officer. We review questions of statutory interpretation for correctness, affording no particular deference to the trial court's interpretation. *See State v. Coleman*, 2001 UT App 281,¶ 5, 34 P.3d 790.

¶ 7 Hoskins next argues that the evidence was insufficient to sustain his conviction for fleeing from a police officer. "In considering an insufficiency-of-evidence claim, we review the evidence and all reasonable inferences that may be drawn from it in a light most favorable to the verdict." *State v. Dunn*, 850 P.2d 1201, 1212 (Utah 1993).

## ANALYSIS

### I. Statutory Interpretation of West Valley City Utah Municipal Code § 21–6–107.

¶ 8 Hoskins argues that *assuming* he (1) heard the police officer yelling at him to stop, (2) acknowledged the officer's request, and (3) ignored the request and continued into his house, these acts do not satisfy the statutory requirements. Specifically, Hoskins argues that because he was in his house for only a "few minutes" before exiting the house and returning to the front yard, he did not flee, evade, or escape from the officer, as the Ordinance requires.

¶ 9 " ' "[W]here statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent. Rather, we are guided by the rule that a statute should generally be construed according to its plain language." ' " *Sorenson's Ranch Sch. v. Oram*, 2001 UT App 354,¶ 8, 36 P.3d 528 (quoting *In re A.B.*, 936 P.2d 1091, 1097 (Utah Ct.App.1997) (citation omitted)).

¶ 10 In pertinent part, the Ordinance states: "It is a class 'B' misdemeanor for any person on foot ... to knowingly flee from, evade, [or] escape ... a police officer after ... receiving a reasonable visual or audible signal or command to remain or stop." The American Heritage College Dictionary defines flee as "[t]o run away, as from trouble or danger." American Heritage Coll. Dictionary 519 (3d ed.1997). Evade is defined as "[t]o escape or avoid by cleverness or deceit." *Id.* at 474. Finally, escape is defined as "[t]o avoid capture, danger, or harm." *Id.* at 467.

¶ 11 Here, the trial court concluded that Hoskins heard the officer when he told Hoskins to stop. Yet, Hoskins knowingly continued into his house despite the officer's repeated commands to stop. By continuing into the house, if only for a short time, Hoskins clearly fled from, evaded, or escaped from the officer. The plain language of the statute is clearly satisfied where, as here, the individual received a simple command to stop and knowingly failed to heed the officer's command. The duration of time Hoskins spent in the house before returning to the front yard is of no consequence. During that time, he could have been attempting to dispose of contraband or retrieve a weapon. In any event, by continuing into the house, Hoskins impeded the officer's investigation and jeopardized the safety of both himself and the officers responding to the reported disturbance. We therefore conclude that when he walked away from the officer and proceeded into the house, Hoskins violated section 21–6–107.

### II. Sufficiency of Evidence

¶ 12 Hoskins next argues that the evidence was insufficient to sustain his conviction for fleeing from a police officer. Specifically, Hoskins contends that the trial court "clearly err[ed] when it found that [Hoskins] stated 'the police were telling me or someone to stop, and thereby concluded that [Hoskins] had heard ... [the] police officer's attempts to have [him] stop."

¶ 13 A critical requirement of appellate advocacy is the duty to marshal the evidence when challenging the trial court's

finding of fact. *See Moon v. Moon,* 1999 UT App 12, ¶ 24, 973 P.2d 431. In doing so,

> the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists. After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate court that the court's finding resting upon the evidence is clearly erroneous.

*West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991).

¶ 14 In the present matter, we have already determined that the trial court properly concluded that Hoskins's acts satisfied the requirements of the Ordinance. In reaching this conclusion, the trial court was presented with evidence from both the City and Hoskins, and was in the best position to assess the credibility of the witnesses and weigh the evidence. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994) (stating that the trial court judge is "in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record").

¶ 15 Now, on appeal, Hoskins merely reargues his position at trial, a position already considered and rejected by the trial court. Hoskins has thus failed to show any "fatal flaw" in the trial court's ruling that would make the ruling clearly erroneous. *Majestic Inv.,* 818 P.2d at 1315. Hoskins's sufficiency of the evidence claim therefore fails.

## CONCLUSION

¶ 16 We conclude that by disregarding the officer's repeated commands to stop and proceeding into his house, Hoskins violated West Valley City Utah Municipal Code § 21–6–107, fleeing a police officer. Further, we conclude that the evidence was sufficient to sustain Hoskins's conviction.

¶ 17 The judgment of the trial court is affirmed.

¶ 18 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and GREGORY K. ORME, Judge.