2020 UT App 74

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JASON THOMAS LAW,
Appellant.

Opinion
No. 20180898-CA
Filed May 7, 2020

Third District Court, Salt Lake Department
The Honorable Randall N. Skanchy
No. 151900261

Debra M. Nelson and Michael R. Sikora, Attorneys
for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1   Jason Thomas Law was convicted of disarming a peace officer based on conduct during a scuffle with a police officer and hospital staff. Law argues on appeal that the evidence was insufficient to support his conviction because the State failed to present sufficient evidence of the required mens rea—that he intentionally tried to take the firearm from the officer. We disagree and affirm.

BACKGROUND

¶2    In July 2014, Law was admitted to the emergency room of Intermountain Medical Center (the Hospital) due to concerns about him being suicidal. Following a mental health examination, Law was determined to be a risk to himself, and his rights to make his own medical decisions or refuse treatment were suspended. The Hospital's medical personnel decided that Law would be transferred to LDS Hospital for inpatient care.

¶3    When he was told about the impending transfer, Law responded, "I'll kill myself before going to that hospital." Unbeknownst to the Hospital staff, Law believed that LDS Hospital was responsible for the death of his grandmother. The Hospital staff explained to him that he did not have a choice in the matter and that if he "continued to make threats against staff or himself, . . . he would have to be physically or chemically restrained."

¶4    At this time, several persons were with Law in the hospital room: an off-duty police officer (Officer), two hospital security guards, a critical care emergency room technician (Technician), a nurse, and Law's father. Officer was in his full police uniform, which included a patrol firearm holstered on his right hip. Shortly after reaching Law's hospital room, Officer began audio recording the events on his phone.

¶5    Law did not stop making threats regarding the transfer, and the staff accordingly prepared to give him a sedative injection. At this time, Officer was on one side of the hospital bed, while one of the security guards (Guard) was on the other. As Guard attempted to hold Law's right arm in anticipation of the injection, Law pulled away, "flailing his arms," and fell off the bed onto the hospital floor next to Officer. As Officer "hunched over" Law, "trying to gain control over his arms," Law reached out and "grabbed a hold of" Officer's holstered

firearm and "began pulling on it, pulling up on it forcibly." Officer told Law that he made a "mistake," and he delivered a blow to Law's "upper rib cage to get him to release his grip, which was successful." Law responded, stating that he was "not trying to hurt [Officer]" but that he was "trying to kill" himself.

¶6 Following a continued struggle, Law eventually received the sedative injection. The State subsequently charged Law with, among other things, disarming a peace officer[1] and disorderly conduct.

¶7 At trial, Officer, Guard, and Technician testified for the State. While their testimonies differed on some of the surrounding details, each testified that Law tried to take Officer's firearm during the altercation. Additionally, Officer's audio recording of the incident was played for the jury. The recording picked up the following exchange, which Officer testified occurred when Law tried to take his weapon:

> Officer: Now you seriously made a mistake! You understand that? When you go to the hospital, you want to go to prison? Huh?
>
> Law: I'm trying to take my life, not yours!
>
> Officer: Too late for that.

¶8 Defense counsel moved for a directed verdict on the disarming a peace officer charge. As relevant here, defense counsel argued that the State had not made its prima facie case

---

1. Disarming a peace officer, as provided in the Utah Code, includes an attempted taking or removal of an officer's firearm as a variant of the offense. Utah Code Ann. § 76-5-102.8(2), (3)(a) (LexisNexis 2017).

on that charge because it had not presented evidence on "the intentional mental state required for that crime." Specifically, counsel argued that the State had not demonstrated that Law "had created in his own mind the conscious objective of taking the officer's gun." In response, the State argued that the jury could infer Law's intent based on Law's words immediately after he tried to take the gun—that he had been trying to take his own life, not Officer's. The trial court agreed with the State and denied Law's motion, reasoning that the evidence could support an inference as to the required intent.

¶9 The jury convicted Law of both disarming a peace officer and disorderly conduct.[2] Law appeals.

## ISSUE AND STANDARDS OF REVIEW

¶10 Law argues on appeal that the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to support his conviction for disarming a peace officer. We ordinarily "review a trial court's ruling on a motion for directed verdict for correctness." *State v. Gonzalez*, 2015 UT 10, ¶ 21, 345 P.3d 1168. However, upon request, in the event certain issues raised in the sufficiency challenge were not preserved, we review them for plain error. *See State v. Doyle*, 2018 UT App 239, ¶ 20, 437 P.3d 1266.

## ANALYSIS

¶11 Law argues on appeal that the trial court erred in denying his motion for a directed verdict because the State "failed to

---

2. Law does not challenge his disorderly conduct conviction on appeal.

prove that [he] formed the required mens rea"—that he *intentionally* tried to disarm the peace officer. On this basis, he asserts that the evidence with respect to his intent was "too inconclusive and speculative" to support the jury's verdict.

¶12 The operative question on a sufficiency of the evidence challenge is "simply whether the jury's verdict is reasonable in light of all of the evidence taken cumulatively." *State v. Ashcraft*, 2015 UT 5, ¶ 24, 349 P.3d 664; *see also Mackin v. State*, 2016 UT 47, ¶ 29, 387 P.3d 986 (stating that the question on review of a sufficiency challenge is "whether the evidence was so lacking that no reasonable jury could find the defendant guilty beyond a reasonable doubt" (cleaned up)). We will therefore affirm the trial court's denial of Law's motion for a directed verdict and affirm Law's conviction if "some evidence exists" from which a reasonable jury could find beyond a reasonable doubt that he intentionally disarmed Officer during the altercation at the Hospital. *See State v. Gonzalez*, 2015 UT 10, ¶ 27, 345 P.3d 1168 (cleaned up). Indeed, if that standard is satisfied, we will affirm the jury's finding with respect to Law's intent "even if the evidence presented at the district court lends itself to multiple reasonable interpretations," *see Mackin*, 2016 UT 47, ¶ 29, or even if "we can identify an 'equally' plausible alternative inference" from the evidence, *see Ashcraft*, 2015 UT 5, ¶ 25; *see also id.* ¶ 27 ("The question presented is not whether some other (innocent) inference might have been reasonable. It is simply whether the inference adopted by the jury was sustainable.").

I. There Is Sufficient Evidence Supporting the Verdict.

¶13 To prove that Law disarmed a peace officer, the State was required to prove, as relevant here, that Law "intentionally" took or removed, or attempted "to take or remove[,] a firearm . . . from the person or immediate presence of a person the actor knows is a peace officer." Utah Code Ann. § 76-5-102.8(2), (3)(a) (LexisNexis 2017).

¶14    As defined by the Utah Code, a person acts intentionally "when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 76-2-103(1). Our courts have repeatedly explained that a defendant's intent is "rarely susceptible to direct proof," with the result that the jury may "rely on reasonable inferences from the circumstances surrounding the crime" to find the requisite intent. *See, e.g.*, *State v. Chacon*, 962 P.2d 48, 51 (Utah 1998) (cleaned up); *State v. Carrell*, 2018 UT App 21, ¶ 57, 414 P.3d 1030 (explaining that a defendant's intent "can be inferred from conduct and attendant circumstances in the light of human behavior and experience" (cleaned up)); *State v. O'Bannon*, 2012 UT App 71, ¶ 43, 274 P.3d 992 ("A jury can infer intent or knowledge from the defendant's acts, conduct, and remarks as well as from the circumstances surrounding the alleged crime."). A reasonable inference is one that is "drawn from the evidence and is based on logic and reasonable human experience." *State v. Harris*, 2015 UT App 282, ¶ 9, 363 P.3d 555 (cleaned up); *see also State v. Ashcraft*, 2015 UT 5, ¶ 18, 349 P.3d 664 (stating that an inference is reasonable "unless it falls to a level of inconsistency or incredibility that no reasonable jury could accept" (cleaned up)).

¶15    We conclude that there was sufficient evidence from which a reasonable jury could have concluded beyond a reasonable doubt that Law intentionally attempted to take Officer's firearm. To begin with, the jury heard evidence that Law was admitted to the Hospital due to general suicide concerns and that, upon being told that he would be transferred to LDS Hospital, Law clearly communicated that he would "kill [himself] before going to that hospital."

¶16    Next, the jury heard from Officer, Guard, and Technician, who each testified that Law tried to take Officer's firearm from his holster once Law was off the hospital bed. Officer testified that as he was trying restrain Law after Law had fallen off the bed, Law "grabbed" his firearm and "forcibly" "began pulling

on it," while Technician testified that Law "placed his hands on [Officer] and attempted to remove his gun." And while Guard did not directly observe Law take hold of Officer's firearm after Law was on the floor, he did see one of Law's hands "going towards the right hip of the officer," which is the hip on which the firearm was holstered. Guard further testified that the incident with Law stood out in his mind as unusual because it involved "someone going for the officer's gun."

¶17 The State also played for the jury Officer's audio recording of the incident. In that recording, Officer can clearly be heard telling Law that he had "seriously made a mistake," asking him whether he "want[ed] to go to prison," to which Law responded, "I'm trying to take my life, not yours." In his testimony, Officer confirmed that this exchange took place at "essentially . . . the moment where [Law] attempted to take" his firearm. Additionally, Technician and Law's father corroborated the substance and timing of this exchange. Technician testified that after Law tried to get Officer's gun, Officer told him that he had made "a very big mistake," to which Law responded that he was "trying to take [his] life, not [Officer's]." Likewise, Law's father testified that, after Law had "fallen off the bed" and Officer had "tackled him," Officer asked Law whether he "wanted to go to jail tonight," and that Law responded that he was "not trying to hurt [Officer]" but that he was "trying to kill [him]self."

¶18 Considered in its totality, we conclude that this is sufficient evidence from which the jury could have reasonably inferred beyond a reasonable doubt that Law intentionally tried to take Officer's firearm. *See Ashcraft*, 2015 UT 5, ¶¶ 22, 27 (evaluating the sufficiency of the evidence "cumulatively," and "in light of the totality of the evidence"); *O'Bannon*, 2012 UT App 71, ¶ 43 (explaining that state of mind may be inferred from "the defendant's acts, conduct, and remarks as well as from the circumstances surrounding the alleged crime").

¶19 To start, the above evidence reasonably supports a jury determination that Law's physical conduct manifested an attempt to take Officer's firearm; Officer, Guard, and Technician each testified to that effect. Further, the testimony along with the audio recording supports a reasonable inference that Law acted with a conscious objective to take the firearm. *See Ashcraft*, 2015 UT 5, ¶ 18 (defining a reasonable inference). In addition to the testimony with respect to Law's physical conduct, multiple witnesses testified that, right after Law attempted to take Officer's firearm, Officer told him that he had made a "big mistake" and that Law responded to Officer that he was "trying to take [his] life," not Officer's. Given the timing and surrounding circumstances, a jury could have reasonably understood this statement as a declaration of Law's intention in attempting to take Officer's firearm. And from the substance of Law's response to Officer as well as his prior statements that he would kill himself before being transferred, the jury could have reasonably inferred that Law's physical attempt to take the firearm arose from a conscious objective to do so for the purpose of killing himself. *See generally* Utah Code Ann. § 76-2-103(1) (defining "intentionally").

## II. Law's Challenges Are Unavailing.

¶20 Law disagrees with the above assessment, claiming that the evidence is "speculative and did not demonstrate [his] culpability any more than it showed his innocence." He first asserts that the evidence supports an "equally reasonable" inference that he was merely fighting with Officer, Guard, Technician, and others to avoid being transferred to LDS Hospital but that he did not try to take Officer's gun. He also contends that the testimonies of Officer, Technician, and Guard did not support a reasonable inference that he intentionally tried to take Officer's gun. We conclude that both challenges are unavailing.

A.     Law's "Equally Reasonable" Challenge

¶21     Law claims that the evidence presented with respect to his intent was insufficient to convict because "equally reasonable" explanations negating that he acted intentionally could have been drawn from the evidence. For example, he claims that it was "equally reasonable" to infer that he accidentally "brushed up against or jostled" Officer's firearm during the scuffle. He also points to the audio recording, noting that it contained no reference to an effort to take the firearm, and suggesting this absence supports a reasonable inference that he did not try to take Officer's firearm.

¶22     In advancing this argument, Law relies heavily on *State v. Cristobal*, 2010 UT App 228, 238 P.3d 1096, for the proposition that "[w]hen the evidence supports more than one possible conclusion, none more likely than the other, the choice of one possibility over another can be no more than speculation." *Id.* ¶ 16. However, as we recently noted in *State v. Wall*, 2020 UT App 36, that proposition is inconsistent with our supreme court's clarification in *Ashcraft* that the identification of "an equally plausible alternative inference is not nearly enough to set a verdict aside." *Id.* ¶ 54 (cleaned up) (quoting *State v. Ashcraft*, 2015 UT 5, ¶ 25, 349 P.3d 664). We are bound to follow, and do follow, *Ashcraft* over *Cristobal*. *See Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 (explaining that the Court of Appeals is "bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court" (cleaned up)). Indeed, as this court's opinion in *Wall* made clear, we no longer view *Cristobal*'s statement regarding equally plausible inferences as valid.

¶23     Therefore, Law's conviction is not reversible on that basis. As explained in *Ashcraft*, on review of a sufficiency challenge, the "question presented is not whether some other (innocent) inference might have been reasonable. It is simply whether the

inference adopted by the jury was sustainable." 2015 UT 5, ¶ 27; *see also Mackin v. State*, 2016 UT 47, ¶ 29, 387 P.3d 986 (explaining, with respect to a sufficiency challenge, that "we will affirm a jury's finding of fact even if the evidence presented at the district court lends itself to multiple reasonable interpretations"). Even assuming that Law's alternative explanations are reasonable, "the jury was by no means compelled to accept the existence of reasonable doubt" he posits on appeal. *Ashcraft*, 2015 UT 5, ¶¶ 25, 29; *see also Mackin*, 2016 UT 47, ¶ 29 (explaining that the relevant question is only "whether the evidence was so lacking that no reasonable jury could find the defendant guilty beyond a reasonable doubt" (cleaned up)). Rather, so long as there is some evidence to sustain the jury's determination—which we have already concluded there is in this case—we must affirm, even in the face of potentially plausible alternative inferences that might have been drawn from the evidence. *See Ashcraft*, 2015 UT 5, ¶ 30 (stating that on review "[w]e cannot disturb the jury's conclusion just because it *could have* reasonably come to a different one").

B.    Law's Challenges to the Witnesses' Testimonies

¶24    Law also challenges any reliance by the jury on Officer's, Guard's, and Technician's testimonies, arguing that they cannot reasonably support an inference that he intentionally attempted to take Officer's firearm.

1.    Officer's and Guard's Testimonies

¶25    First, Law contends that Officer's and Guard's testimonies cannot be relied on to support a finding of intent because they contradict both each other and the audio recording. As to Guard, Law notes that Guard testified that Law "used his left hand" to reach for Officer's firearm, while Officer testified that Law had used his right hand; that Guard "admitted he never saw Law actually touch [Officer's] firearm"; and that Guard's recounting

of what Officer said about Law's attempt to grab Officer's firearm does not align with the audio recording. As to Officer, Law claims that Officer testified that he told Law he made a mistake in trying to take his weapon, but that in the audio recording Officer did not specifically refer to his weapon.

¶26    However, as our supreme court has explained, on review it is not "our function to determine guilt or innocence or the credibility of conflicting evidence and the reasonable inferences to be drawn therefrom," and accordingly, the existence of "contradictory testimony alone is not sufficient to disturb a jury verdict." *Mackin*, 2016 UT 47, ¶ 29 (cleaned up). Thus, the fact that Officer's, Technician's, and Guard's recollections of the event might not have been perfectly consistent with one another or with the audio recording is not, without more, a sufficient basis on which to reverse the verdict. "After all, the jury, not the appellate court, is the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence." *State v. Granados*, 2019 UT App 158, ¶ 28, 451 P.3d 289 (cleaned up). Simply put, that the jury weighed the evidence differently than Law believes it should have is not enough to persuade us that the evidence of his intent was insufficient. *See State v. Howell*, 649 P.2d 91, 97 (Utah 1982) (explaining that a jury is not "obligated to believe the evidence most favorable to [the] defendant" and that the "existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict" on appeal).

2.    Technician's Testimony

¶27    Second, Law asserts that Technician's testimony cannot be used to support an inference of intent because it is "inherently improbable" under *State v. Robbins*, 2009 UT 23, 210 P.3d 288. Our supreme court explained in *Robbins* that a conviction must be based on "substantial reliable evidence" and that, although a court "must ordinarily accept the jury's determination of witness

credibility, when the witness's testimony is inherently improbable, the court may choose to disregard it." *Id.* ¶¶ 14–16 (cleaned up); *see also State v. Prater*, 2017 UT 13, ¶ 38, 392 P.3d 398 (explaining that the court in *Robbins* reached its inherent improbability determination by relying on "inconsistencies in the [witness's] testimony *plus* the patently false statements the [witness] made *plus* the lack of any corroboration"). "[T]estimony is inherently improbable and may likewise be disregarded if it is (1) physically impossible or (2) apparently false." *Robbins*, 2009 UT 23, ¶ 16; *see also Prater*, 2017 UT 13, ¶¶ 32–33, 42–43 (explaining that testimony is inherently improbable in circumstances where it is "physically impossible" or "incredibly dubious" such that it is "apparently false," but emphasizing that the existence of corroborating evidence ordinarily defeats an inherent improbability claim (cleaned up)).

¶28 Law claims that Technician's "description of what occurred in Law's room was materially inconsistent, was patently false, and lacked corroboration on every point from the testimony of the other witnesses[] and from [Technician's] original witness statement." As support, he points to Technician's testimony that Law tried to retrieve Officer's firearm from a "standing position" and that Law had "actually undone the retention strap" on Officer's firearm, which he contends is in "direct contrast" to Officer's testimony that "the retention strap on his firearm could not be undone" without depressing the lever and hood from "the inside closest to [Officer's] body." (Cleaned up.) He also generally claims that Technician's testimony is not corroborated by the audio recording.

¶29 Law's specific challenge to Technician's testimony as inherently improbable is unpreserved. "To preserve an issue for appeal, a party must present it to the trial court in such a way that the trial court has an opportunity to rule on that issue." *State v. Doyle*, 2018 UT App 239, ¶ 13, 437 P.3d 1266 (cleaned up). As

this court explained in *Doyle*, a *Robbins* challenge to a witness's testimony must be specifically raised before the trial court to be preserved. *Id.* ¶¶ 14, 17–19.

¶30    Here, in his directed verdict motion, Law merely argued that the State had failed to make its prima facie case because it did not present sufficient evidence that Law intended to disarm Officer. Law did not argue to the court that the evidence was insufficient for the additional reason that Technician's testimony should be rejected as inherently improbable or request that the court consider the sufficiency of the evidence only after excluding Technician's testimony as such. *See id.*; *see also State v. Skinner*, 2020 UT App 3, ¶¶ 23–29, 457 P.3d 421 (concluding that a general directed verdict motion was insufficient to preserve the issue of whether a witness's testimony was inherently improbable under *Robbins*); *State v. Gallegos*, 2018 UT App 112, ¶ 14, 427 P.3d 578 ("Where a motion for a directed verdict makes general assertions but fails to assert the specific argument raised on appeal, the directed verdict motion itself is insufficient to preserve the more specific argument for appeal." (cleaned up)).

¶31    Nonetheless, Law asks that we review his sufficiency claim for plain error if we determine that it is unpreserved (as we have done). To establish plain error in the context of a sufficiency claim, Law must establish that the insufficiency is "obvious and fundamental." *Doyle*, 2018 UT App 239, ¶ 20 (cleaned up). "An example of an obvious and fundamental insufficiency is the case in which the State presents *no* evidence to support an essential element of a criminal charge." *Prater*, 2017 UT 13, ¶ 28 (cleaned up). Law has not established that the trial court plainly erred.

¶32   Law generally argues, with reference to the inconsistencies and contradictions he identified in Technician's testimony, that the trial court obviously erred because "a straightforward application of Utah law establishes that verdicts

cannot be supported by speculation and conjecture" and because the testimony does not support that he had the requisite intent. We disagree.

¶33 A *Robbins* challenge is a narrow exception to the general rule that courts "are not 'in the business of reassessing or reweighing evidence' already considered by a jury." *Skinner*, 2020 UT App 3, ¶ 24 (quoting *Prater*, 2017 UT 13, ¶ 32); *see also State v. Rivera*, 2019 UT App 188, ¶ 23 n.6, 455 P.3d 112 (stating that a case that "actually falls within the *Robbins-Prater* rubric is exceedingly rare"). Indeed, the court in *Robbins* reached its inherent improbability conclusion only because of the "inconsistencies in the [witness's] testimony *plus* the patently false statements the [witness] made *plus* the lack of any corroboration." *Prater*, 2017 UT 13, ¶ 38; *see also Rivera*, 2019 UT App 188, ¶ 24 (stating that "if an appellant fails to show all three elements [set out in *Robbins*]—material inconsistencies *plus* patent falsity *plus* lack of corroboration—a judge is likewise precluded from reconsidering witness credibility"). In this respect, one witness's testimony is not inherently improbable simply because there are inconsistencies in it or as compared to other witness testimony. *Prater*, 2017 UT 13, ¶¶ 38–39; *Skinner*, 2020 UT App 3, ¶¶ 31, 35. Likewise, the presence of corroborating evidence apart from the allegedly improbable testimony defeats the claim. *See Robbins*, 2009 UT 23, ¶ 19 ("The existence of any additional evidence supporting the verdict prevents the judge from reconsidering the witness's credibility."); *see also Prater*, 2017 UT 13, ¶¶ 42–43; *Skinner*, 2020 UT App 3, ¶¶ 31–34; *Rivera*, 2019 UT App 188, ¶¶ 24–27.

¶34 Although Law cites inconsistencies between Technician's testimony, Officer's testimony, and the audio recording to support his inherent improbability claim, inconsistencies and contradiction alone are not enough. *Prater*, 2017 UT 13, ¶¶ 38–39 (concluding that the inconsistencies in three witnesses' accounts "by themselves [were] insufficient to invoke the inherent

improbability exception" (cleaned up)); *Skinner*, 2020 UT App 3, ¶¶ 31, 35. Moreover, as discussed above, *supra* ¶¶ 15–19, apart from Technician's testimony, the jury had before it Officer's, Guard's, and even Father's testimonies as well as the audio recording—all of which, taken together, provided the jury some evidence to support beyond a reasonable doubt the inference that Law intentionally attempted to take Officer's firearm.

¶35    Thus, even assuming that Technician's testimony differed from Officer's testimony or the audio recording, or otherwise contained inconsistencies, we cannot conclude that the trial court plainly erred in failing to sua sponte deem Technician's testimony inherently improbable.[3]

CONCLUSION

¶36    We conclude that there was sufficient evidence presented to support the jury's verdict. On this basis, we affirm.

─────────

─────────

3. Law also cites some of the prosecution's closing argument statements with respect to what Law "knew" he was doing, claiming that the prosecutor failed to rely on an "intentional" rather than a "knowing" mens rea in establishing the offense. However, other than characterizing the prosecutor's closing argument in this way, Law does not suggest that we should reverse because of it; indeed, he does not place his characterization into a recognizable legal frame and argue for reversal on such a basis. Instead, such references appear to be an attempt to generally buttress his overall argument regarding the sufficiency of the evidence about his intent. Therefore, we do not view this as though it were a discrete issue or a potential basis for reversal.