**2020 UT App 115**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROGELIO OSEGUERA-LOPEZ,
Appellant.

Opinion
No. 20190176-CA
Filed August 13, 2020

Third District Court, Salt Lake Department
The Honorable Adam T. Mow
No. 181904038

Andrea J. Garland and Elise C. Lockwood, Attorneys
for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

HAGEN, Judge:

¶1     On Christmas Eve, Rogelio Oseguera-Lopez entered a department store, grabbed $1,000 worth of merchandise, and attempted to leave without paying. When stopped by store employees, Oseguera-Lopez displayed a knife and then made his way toward a different exit. He was thereafter arrested and convicted of aggravated robbery. On appeal, Oseguera-Lopez contends that the district court committed reversible error by declining to instruct the jury on the uncharged crime of retail theft and by denying his motion for a directed verdict. We reject his arguments and affirm.

BACKGROUND[1]

¶2     One Christmas Eve, Oseguera-Lopez entered a department store with a flashlight, an unsheathed hunting knife, a folding knife, and a pair of wire cutters. He also had $20 in his pocket but carried no other means of paying for merchandise.

¶3     Oseguera-Lopez went to the luggage department, took a duffel bag out of its box, and placed the unsheathed knife and flashlight inside it. He then carried the duffel bag to the handbag department, selected a handbag, and placed the handbag on the floor next to the open duffel bag.

¶4     By this point, Oseguera-Lopez had attracted the attention of the store's loss prevention team, who had been observing his behavior via security cameras. A loss prevention employee followed Oseguera-Lopez around the sales floor to keep an eye on him. Then, while Oseguera-Lopez was distracted, the employee grabbed the duffel bag and handbag, hid them behind a register, and continued observing Oseguera-Lopez as he selected more handbags.

¶5     At the request of the loss prevention staff, a merchandise manager approached Oseguera-Lopez to ask if he needed help. He declined the offer of assistance and continued looking at handbags for another ten to twenty minutes, but he seemed to become increasingly agitated. Oseguera-Lopez asked another store employee if she knew where the duffel bag was. When the employee claimed that she did not know, Oseguera-Lopez grabbed four handbags at once and headed toward the store's

_____

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Jones*, 2020 UT App 31, n.1, 462 P.3d 372 (cleaned up).

south exit. Walking quickly, he passed several cash registers, including the final point of sale before the exit, but made no attempt to pay for the handbags he was carrying.

¶6     As he approached the south exit, Oseguera-Lopez was intercepted by the merchandise manager. As he approached her, he asked, "Where's my duffel bag?" The merchandise manager responded, "I don't know what you're talking about." Oseguera-Lopez inquired if the store had any security cameras, and the merchandise manager informed him that security cameras were handled by a different department but that she could look into it for him if he handed her the handbags he was carrying.

¶7     Oseguera-Lopez handed the merchandise manager one handbag. Then, as he handed over a second handbag, he used his other hand to reach into his pocket and pulled out the folding knife. Although he never unfolded the knife, he displayed it in his open palm in a manner the merchandise manager described as "very aggressive."

¶8     The loss prevention manager, who had been watching the situation unfold, saw the knife and immediately told someone to call the police. At that point, Oseguera-Lopez flipped off the store employees, swore at them, and quickly walked away. He made his way toward the north exit, pausing briefly to ask other store employees if they knew where the duffel bag was. When he was three to four feet away from the north exit, but still inside the store, Oseguera-Lopez was stopped by a responding police officer.

¶9     The officer and loss prevention staff took Oseguera-Lopez to the store's loss prevention office for questioning. They asked him his name, where he lived, his address, how he had traveled to the store that day, and if there was anyone waiting for him. In response, Oseguera-Lopez told them that his name was "Javier" and provided several false birth dates. When asked to explain his actions at the store, Oseguera-Lopez said that "his friend told

him to come and get [the handbags], and that his friend was going to take them back to Mexico." The officer searched a law enforcement database using the information that Oseguera-Lopez had provided. When the officer could not find any match in his database, he took Oseguera-Lopez's fingerprints. The fingerprints later revealed Oseguera-Lopez's identity.

¶10 The officer reported the case as a "retail theft," but did not arrest Oseguera-Lopez because nobody was available to transport him to jail. Instead, the officer escorted Oseguera-Lopez off the store's property. The total value of the items Oseguera-Lopez attempted to take from the store totaled just over $1,000.

¶11 The State charged Oseguera-Lopez with aggravated robbery and providing false personal information to a peace officer. At the close of the State's case at trial, Oseguera-Lopez moved for a directed verdict, which the district court denied. The defense then rested without presenting evidence.

¶12 In a discussion with the district court after the close of evidence, Oseguera-Lopez's counsel revealed that she intended to argue at closing that Oseguera-Lopez committed retail theft—not aggravated robbery—and that the State had overcharged him. In accordance with this theory, Oseguera-Lopez requested two jury instructions on the subject of retail theft. The court denied the requested instructions.

¶13 Oseguera-Lopez also requested the following jury instruction on the elements of "attempt" as a crime:

> A person is guilty of an attempt to commit a crime
> if he:
>
> (a) Engages in conduct constituting a substantial
> step toward commission of the crime; and

(b)(i) intends to commit the crime; or

(b)(ii) when causing a particular result is an element of the crime, he acts with an awareness that his conduct is reasonably certain to cause the result.

Conduct constitutes "a substantial step" if it strongly corroborates the actor's mental state as described above.

Pointing to the references to "attempt" in Utah's robbery statute, *see* Utah Code Ann. § 76-6-301(2)(a)–(c) (LexisNexis 2017), Oseguera-Lopez argued that the jury needed to be given the "specific legal definition" of attempt. But the district court disagreed and denied the instruction.

¶14   The jury convicted Oseguera-Lopez as charged. He now appeals from his aggravated robbery conviction.


ISSUES AND STANDARDS OF REVIEW

¶15   Oseguera-Lopez contends that the district court abused its discretion by denying his request for the two jury instructions relating to retail theft and his request for an instruction providing the elements of attempt. "We review a district court's refusal to give a jury instruction for abuse of discretion." *Miller v. Utah Dep't of Transp.*, 2012 UT 54, ¶ 13, 285 P.3d 1208.

¶16   Oseguera-Lopez also argues that the district court erred by denying his motion for a directed verdict because "the State presented insufficient evidence that [he] took personal property from the immediate presence of another person with a purpose to deprive the person of the property." "We review the district court's denial of a motion for directed verdict for correctness." *State v. Barner*, 2020 UT App 68, ¶ 9, 464 P.3d 190 (cleaned up).

But because Oseguera-Lopez "challenges the denial of a motion for directed verdict based on the sufficiency of the evidence, the applicable standard of review is highly deferential." *See id.* (cleaned up). "We will uphold the district court's denial if, when viewed in the light most favorable to the State, some evidence exists from which a reasonable jury could find that the elements of the crime have been proven beyond a reasonable doubt." *Id.* (cleaned up).

ANALYSIS

¶17    On appeal, Oseguera-Lopez challenges his conviction for aggravated robbery. As applicable to this case, a person commits aggravated robbery if he "uses or threatens to use a dangerous weapon" "while in the course of committing robbery." Utah Code Ann. § 76-6-302(1)(a) (LexisNexis 2017). A person is "committing robbery" when he "intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft or wrongful appropriation." *Id.* § 76-6-301(1)(b). And an act is "in the course of" committing a robbery "if it occurs in an attempt to commit, during the commission of, or in the immediate flight after the attempt or commission of a robbery." *Id.* § 76-6-302(3). With these statutory definitions in mind, we address each of Oseguera-Lopez's claims of error.

I. The Retail Theft Instructions

¶18    Oseguera-Lopez asserts that the district court abused its discretion by denying his request for two jury instructions on the subject of retail theft. The first of those instructions defined the crime of retail theft according to statute. *See* Utah Code Ann. § 76-6-602 (LexisNexis 2017). The second sought to instruct the jury that "retail theft" was a distinct crime from both "theft" and "wrongful appropriation" and that only the latter two crimes could serve as the basis of a robbery conviction. *See id.* § 76-6-301(1)(b) ("A person commits robbery if the person intentionally

or knowingly uses force or fear of immediate force against another in the course of committing *a theft or wrongful appropriation*." (emphasis added)).

¶19 According to Oseguera-Lopez, the instructions were necessary because "the facts showed a retail theft had taken place [and] the State could have charged the case appropriately but elected to charge aggravated robbery" instead. Essentially, the defense's theory was that Oseguera-Lopez committed a crime but not the crime that was actually charged. Further, he wanted the jury instructed that retail theft was not a lesser included offense of robbery and so could not serve as the basis of a robbery conviction—unlike the crimes of theft or wrongful appropriation. *See id.* In short, Oseguera-Lopez aimed to convince the jury that he had committed retail theft, which, in his view, could not serve as the basis for a robbery conviction.

¶20 A defendant may certainly argue that his actions, while criminal, did not rise to the level of the crime charged. But he is not entitled to a jury instruction defining a crime that is not at issue, so long as the remaining instructions adequately allow the defense to argue its theory to the jury. This court previously considered whether a defendant is entitled to a jury instruction on "a lesser, uncharged, unincluded offense" and determined that such a position was "wholly without merit." *State v. Tennyson*, 850 P.2d 461, 470 (Utah Ct. App. 1993). In *Tennyson*, we reasoned that such an instruction was "entirely independent from [the] defendant's ability to present his . . . defense to the jury" and that "[t]he jury instructions as a whole clearly afforded the jury an opportunity to accept [the] defendant's theory of the case and find him innocent if the jurors determined that the facts bore his theory out." *Id.* at 471. Similarly, here, the jury instructions as a whole allowed Oseguera-Lopez to argue his theory that, although his actions were criminal, they did not rise to the level of aggravated robbery—the charged crime, on which the jury was properly instructed. Accordingly, the district court acted well within its discretion in declining to instruct the jury

on the elements of the lesser, uncharged, unincluded offense of retail theft.

¶21 As for the second instruction, the district court acted within its discretion in refusing to instruct the jury that retail theft could not serve as a basis for robbery because that proposition is not supported by any legal authority. At trial, the State argued that Oseguera-Lopez was guilty of a specific variant of robbery—"intentionally or knowingly us[ing] force or fear of immediate force against another in the course of committing a theft or wrongful appropriation." *See* Utah Code Ann. § 76-6-301(1)(b). Oseguera-Lopez views the language concerning "a theft or wrongful appropriation" as requiring that a conviction on that variant of robbery be based on either the crimes of "theft," as defined in Utah Code section 76-6-404, or "wrongful appropriation," as defined in Utah Code section 76-6-404.5, and precluding a conviction based on all other types of theft, including retail theft as defined in Utah Code section 76-6-602. But there is no basis in the wording of the statute or in Utah caselaw to support that proposition; instead, legal authorities support the opposite conclusion.

¶22 The robbery statute does not specifically refer to the singular crime of "theft" as defined in Utah Code section 76-6-404. Rather it refers to "a theft." *See id.* § 76-6-301(1)(b) (emphasis added). "Most courts have construed 'a' or 'an' as meaning 'any' and as not restricted to just one." *Evans v. State*, 914 A.2d 25, 75 (2006). Indeed, "[i]t is well-established that the use of the indefinite article 'a' or 'an' signals a generic reference." *State v. Culver*, 941 N.W.2d 134, 140 (Minn. 2020) (citing Bryan A. Garner, The Redbook: A Manual on Legal Style § 10.38 (2d ed. 2006)); *see also United States v. Martinez-Candejas*, 347 F.3d 853, 856 (10th Cir. 2003) ("The use of the indefinite article 'an' and the addition of 'offense' at the phrase's end indicates that the phrase 'an alien smuggling offense' is meant to refer not just to alien smuggling per se but to a family of offenses that are in some sense related to alien smuggling."). Thus, the plain language of

the statute suggests that the robbery statute includes generic theft offenses and is not limited to the singular crime of theft as defined in Utah Code section 76-6-404. *See id.*; *see also State v. Campbell*, 2012 UT App 75, ¶ 7, 274 P.3d 1021 (concluding that a reference to "theft" in another statute "may also apply to retail theft" (cleaned up)).

¶23 Further, Oseguera-Lopez's argument seems to assume that, because his attempted theft was perpetrated against a retail establishment, "retail theft" was the only underlying crime he could have committed. But we see no reason why his conduct would not have satisfied the elements of "theft" as defined in Utah Code section 76-6-404. One need only look to Utah caselaw to find examples where taking merchandise from a retail store has been prosecuted under the theft statute. *See generally, e.g.*, *State v. Bender*, 581 P.2d 1019 (Utah 1978) (affirming a theft conviction based on the defendant's theft of a coat from a clothing store); *State v. Harris*, 2015 UT App 282, 363 P.3d 555 (affirming a theft conviction based on the defendant's theft from a ski specialty store). And even under Oseguera-Lopez's suggested interpretation of the robbery statute, actions constituting "theft" as defined in Utah Code section 76-6-404 can serve as the basis for a robbery conviction.

¶24 In sum, the district court properly exercised its discretion in refusing to instruct the jury on the elements of a crime for which the jury was not asked to render a verdict. A defendant is not entitled to jury instructions regarding lesser, uncharged, unincluded offenses so long as the remaining instructions adequately allow the defense to argue its theory to the jury, as the instructions here did. In addition, the court properly rejected Oseguera-Lopez's request to instruct the jury on the unsupported proposition that theft of merchandise from a retail establishment cannot constitute "a theft" within the meaning of the robbery statute.

## II. The Attempt Instruction

¶25    Oseguera-Lopez next argues that the district court abused its discretion by denying his request to instruct the jury on the elements of "attempt." *See* Utah Code Ann. § 76-4-101 (LexisNexis 2017) (providing that a person "is guilty of an attempt to commit a crime if he . . . engages in conduct constituting a substantial step toward commission of the crime" and has the requisite mental state). Given that aggravated robbery includes the use or threatened use of a dangerous weapon during "an attempt to commit" robbery, Oseguera-Lopez believes that an instruction defining "attempt" was necessary.

¶26    The State responds that Oseguera-Lopez was not entitled to his proposed instruction because Utah Code section 76-4-101 does not define the word "attempt," but sets forth the elements of attempt as a separate crime. If Oseguera-Lopez had been charged with attempted aggravated robbery, such an instruction would be proper. *See State v. Harmon*, 712 P.2d 291, 292 (Utah 1986) (holding that failure to instruct on the elements of attempt was error where the defendant was charged with attempted robbery). But because Oseguera-Lopez was charged with a *completed* aggravated robbery offense, not an attempted offense, the State argues that the proposed instruction is inapplicable.

¶27    Because Oseguera-Lopez has not demonstrated that he was harmed by the instruction's omission, we need not decide whether the word "attempt" as it appears in the aggravated robbery statute requires proof of the elements set forth in the statute defining attempt as a separate crime. *See State v. Garcia*, 2017 UT 53, ¶ 40, 424 P.3d 171 ("[E]rrors in jury instructions— even instructions going to the elements of a charged crime— require harmless-error analysis."). Even assuming, without deciding, that such an instruction would be proper in this context, the proposed instruction would have simply required

the jury to find that Oseguera-Lopez took a "substantial step" toward committing robbery with the intent to commit the crime.

¶28 There is no reasonable likelihood that the jury would have reached a different verdict had it been required to find that Oseguera-Lopez took at least a substantial step toward committing robbery with the intent to commit the crime. The evidence at trial established that he entered the store carrying two weapons: an unsheathed hunting knife and a folding knife. He took four handbags and headed toward the store's exit, passing several cash registers without stopping to pay, and stopped only when he was intercepted by the store's merchandise manager. After being confronted by the merchandise manager, he pulled out a knife and displayed it in a "very aggressive" and threatening manner before quickly making his way toward a different exit. He later admitted that he had intended to give the handbags to a friend to take to Mexico.

¶29 By returning a guilty verdict, the jury necessarily found that Oseguera-Lopez acted with the mental state required to commit the offense of robbery, that is, he intentionally or knowingly used "force or fear of immediate force against another in the course of committing a theft." *See* Utah Code Ann. § 76-6-301(1)(b). Having reached that conclusion, there is no reasonable likelihood that the jury would have found that none of Oseguera-Lopez's actions constituted a "substantial step" toward committing that crime. The act of bringing weapons to a store where he intended to steal merchandise might, by itself, qualify as a substantial step toward committing robbery. *Cf. United States v. Stallworth*, 543 F.2d 1038, 1041 (2d Cir. 1976) (affirming an attempted bank robbery conviction where the defendants, among other things, "armed themselves" and "moved ominously toward the bank"). Similarly, taking the duffel bag out of its box, placing his wire cutters and unsheathed knife in the open bag, and carrying it to the handbag department might have constituted a substantial step. But here, Oseguera-

Lopez took the additional steps of carrying the handbags past the last point of sale and toward the exit and then displaying a knife to the merchandise manager when confronted. Given these facts, there is no reasonable likelihood that the jury would have found that Oseguera-Lopez did not take a substantial step toward committing "a theft" by means of "force or fear of immediate force." *See* Utah Code Ann. § 76-6-301(1)(b). Accordingly, there is no reasonable likelihood that the outcome of the trial would have been different had the jury been instructed on the elements of attempt as Oseguera-Lopez requested.

### III. Motion for a Directed Verdict

¶30    Lastly, Oseguera-Lopez argues that the district court erred by denying his motion for a directed verdict because there was insufficient evidence presented at trial to demonstrate that he used force or fear of immediate force in the course of committing a theft or wrongful appropriation.[2] Specifically, he

---

2. Oseguera-Lopez also asserts that "the evidence was insufficient to prove that [he] used force or fear to take handbags from another person with the intent to deprive the person of the handbags," which constitutes a sufficiency challenge to the evidence supporting the variant of robbery laid out in Utah Code section 76-6-301(1)(a). The State responds that, although the jury was instructed on that variant, the State explicitly disavowed any reliance on it at trial, telling the jury to "mark out" the portion of instructions relating to it and to instead focus on whether Oseguera-Lopez was guilty of the second variant of robbery laid out in Utah Code section 76-6-301(1)(b). Therefore, according to the State, whether there was sufficient evidence to sustain a conviction on that robbery variant is "irrelevant." (Citing *State v. Johnson*, 821 P.2d 1150, 1159 (Utah 1991) ("[A] general verdict of guilty cannot stand *if the State's case was premised on more than one factual or legal theory of the elements of*

(continued…)

contends that "showing the knife was not in the course of attempting theft or wrongful appropriation because [he] was in the course of handing [the employee] the bags rather than taking or keeping them." (Cleaned up.) Nor, according to Oseguera-Lopez, "was the knife displayed in the course of immediate flight because [he] did not flee."[3] (Cleaned up.)

_____

(…continued)

*the crime* and any one of those theories is flawed or lacks the requisite evidentiary foundation." (emphasis added)).) Oseguera-Lopez does not argue otherwise. Because we determine that sufficient evidence supported Oseguera-Lopez's conviction under the second variant of robbery on which the State relied at trial, we do not address Oseguera-Lopez's challenge to the first.

3. The State argues that Oseguera-Lopez did not preserve this specific sufficiency challenge because his motion for a directed verdict went to whether there was sufficient evidence that displaying the closed folding knife rose to the level of "knowingly and intentionally . . . promot[ing] fear of immediate force." Now, on appeal, Oseguera-Lopez contends that the evidence did not support the finding that he used fear of force in the course of committing a theft. Therefore, according to the State, the district court was not given an opportunity to address the issue now raised on appeal and we are limited to reviewing only for plain error. *See State v. Dean*, 2004 UT 63, ¶ 14, 95 P.3d 276 (limiting itself to plain error review where the appellant "failed to put the trial court on notice of the alleged error"). Oseguera-Lopez responds that either his motion for a directed verdict or the court's ruling on that motion was sufficient to preserve the issue for our review. We do not resolve the question of whether Oseguera-Lopez's sufficiency challenge was preserved for appeal because there was no error, plain or

(continued…)

¶31 Although Oseguera-Lopez displayed the knife as he was returning some of the handbags to the merchandise manager, an act is considered "in the course of committing a theft" if it occurs "in the immediate flight after the attempt or commission" of a theft. *See* Utah Code Ann. § 76-6-301(2)(c) (LexisNexis 2017). Immediately after Oseguera-Lopez displayed his knife to the merchandise manager, he quickly walked away and made his way toward a different store exit. That he quickly walked away rather than sprinted does not mean that he was not fleeing from his attempted theft. *See West Valley City v. Hoskins*, 2002 UT App 223, ¶¶ 10–11, 51 P.3d 52 (affirming a conviction for fleeing a police officer where the defendant walked toward his home after being told to stop by an officer). And the jury could have reasonably inferred that he displayed his knife in an attempt to aid his escape by dissuading any individuals from trying to stop him as he walked toward the other exit. *See State v. Phillips*, 2006 UT App 211U, para. 4 (per curiam) (affirming conviction for aggravated robbery where the defendant, in attempting to escape from security personnel, said, "I have a knife," and displayed the knife).

¶32 Oseguera-Lopez asserts that the above-cited evidence could also give rise to innocent inferences. And, relying on *State v. Cristobal*, 2010 UT App 228, 238 P.3d 1096, *abrogated by State v. Law*, 2020 UT App 74, 464 P.3d 1192, he contends that we must reverse his conviction because "the evidence supports more than one possible conclusion, none more likely than the other," meaning that the jury's conclusion of guilt was based on "no more than speculation." *See id.* ¶ 16. "But as our supreme court has . . . clarified, 'the fact that we can identify an equally plausible alternative inference is not nearly enough to set a

---

(…continued)
otherwise, in the court's denial of his motion for a directed verdict.

verdict aside.'" *State v. Wall*, 2020 UT App 36, ¶ 54, 460 P.3d 1058 (quoting *State v. Ashcraft*, 2015 UT 5, ¶ 25, 349 P.3d 664) (otherwise cleaned up); *see also State v. Law*, 2020 UT App 74, ¶ 22, 464 P.3d 1192, *petition for cert. filed*, July 6, 2020 (No. 20200509). Rather, "the question presented is not whether some other (innocent) inference might have been reasonable, but simply whether the inference adopted by the jury was sustainable." *Wall*, 2020 UT App 36, ¶ 54 (cleaned up). And as explained above, the jury's inferences were reasonable based on the evidence.

¶33    In sum, the evidence supporting the jury's verdict was sufficient to support Oseguera-Lopez's conviction. Therefore, we affirm the district court's denial of Oseguera-Lopez's motion for a directed verdict.

CONCLUSION

¶34    The district court did not abuse its discretion by denying Oseguera-Lopez's request for the two jury instructions relating to retail theft. Additionally, the court's refusal to provide an instruction on the elements of attempt was harmless, even assuming that such an instruction would be appropriate where, as here, the defendant is charged with a completed crime. Finally, the evidence that Oseguera-Lopez used force or fear of immediate force in the course of committing a robbery was sufficient to support the verdict.

¶35    Affirmed.

_____